

# IN THE
# TENTH COURT OF APPEALS

### No. 10-24-00002-CV

## IN THE INTEREST OF C.J.B., A CHILD

**From the 413th District Court
Johnson County, Texas
Trial Court No. DC-D202300073**

## MEMORANDUM OPINION

Father appeals from the trial court's order terminating his parental rights to C.J.B.[1] In six issues, Father challenges the legal and factual sufficiency of the evidence to support his predicate grounds for termination and the best-interest finding, the trial court's finding that he failed to prove the affirmative defense enumerated in Section 161.001(d) by a preponderance of the evidence, and the trial court's denial of his motion to extend the statutory dismissal deadline. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1), (b)(2), (d); *See Id.* at § 263.401(b).

---

[1] C.J.B.'s mother executed an affidavit of voluntary relinquishment of parental rights to C.J.B. and does not appeal.

**Predicate Grounds**

In his first, second, and third issues on appeal, Father asserts that his predicate findings under Texas Family Code Sections 161.001(b)(1)(D), (b)(1)(E), and (b)(1)(O), are not supported by legally and factually sufficient evidence. *Id.* at §§ 161.001(b)(1)(D), (b)(1)(E), (b)(1)(O). In his fourth issue, Father claims that termination under Section 161.001(b)(1)(O) was improper because he established the affirmative defense in Section 161.001(d) by a preponderance of the evidence. *Id.* at § 161.001(d).

STANDARDS OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *see also In re J.F.-G.*, 612 S.W.3d 373, 381-82 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). If multiple predicate violations are found by the factfinder, we will affirm based on any one finding because only one finding is necessary for termination of parental rights when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). But if one of the predicate grounds is based on endangerment under Subsection D or E, we are required to fully address that ground, if presented on appeal, based on future collateral consequences of such a finding. *See In re N.G.*, 577 S.W.3d 230, 234-37 (Tex. 2019). We give due deference to the factfinder's findings and

must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

APPLICABLE LAW

Termination under Subsection E requires proof of endangerment, which means to expose the child to loss or injury, to jeopardize. *Tex. Dep't. of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The endangerment analysis under Subsection E focuses on whether sufficient evidence exists that the endangerment to the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). The factfinder may consider conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Department of Family and Protective Services ("the Department"). *See J.O.A.*, 283 S.W.3d at 345. Additionally, a parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize the child's present or future physical or emotional well-being. *See J.S.S.*, 594 S.W.3d at 505.

DISCUSSION

A parent's failure to remain drug free while his parental rights to his child are in jeopardy may support a finding of endangering conduct under Subsection E. *See Vasquez*

*v. Tex. Dep't. of Protective & Regul. Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Father acknowledged that his methamphetamine use contributed to C.J.B.'s removal. While Father testified that he was sober at the time of trial, evidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue. *See In re M.G.D.*, 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Though Father provided negative drug tests on July 17, 2023 and August 23, 2023, he tested positive for methamphetamine in samples collected on March 17, 2023, April 10, 2023, June 29, 2023, and September 15, 2023. His highest reported level of methamphetamine was on his most recent drug test. Father admitted to the Department that he would use drugs when he "had a rough week" or he "got down real low." Considering Father's history of recurring substance abuse, the trial court could reasonably conclude that Father's substance abuse would continue once released from incarceration.

Further, a parent's illegal drug use may support termination under Subsection E because it exposes the child to the possibility that the parent may be imprisoned. *Walker v. Tex. Dep't. of Fam. & Protective Servs.*, 312 S.W.3d 608, 617-18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). In this case, the concern with Father's drug-related imprisonment was not theoretical. Approximately five months into this case, Father was accused of a new felony-level possession of a controlled substance charge. He was subsequently arrested and was still in custody at the final hearing. Father agreed that his

punishment range was to two to ten years in prison because of a prior methamphetamine-related conviction, though he hoped to accept a favorable plea deal at his next court setting for just three additional months of incarceration. Father's persistent drug use and repeated drug-related incarceration exposes C.J.B. to a life of uncertainty and instability and supports a finding under Subsection E. *See Interest of M.T.R.*, 579 S.W.3d 548, 568 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

Because we find the evidence is legally and factually sufficient under Subsection E, we do not need to address Father's first and third issues regarding the sufficiency of the evidence under Subsections D and O or his fourth issue regarding the affirmative defense in Section 161.001(d). *See Interest of E.P.*, No. 10-22-00086-CV, 2022 Tex. App. LEXIS 5250, 2022 WL 2977479, at *8 (Tex. App.—Waco July 27, 2022, no pet.) (mem. op.); *In re A.F.*, No. 10-19-00335-CV, 2020 Tex. App. LEXIS 2328, 2020 WL 1313450, at *49-50 (Tex. App.—Waco Mar. 19, 2020, no pet.) (mem. op.). We overrule Father's first, second, third, and fourth issues on appeal.

### Best-Interest Finding

There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship. *Jordan*, 325 S.W.3d at 729. However, while parental rights are of constitutional magnitude, they are not absolute. *Id*. The non-exhaustive list of factors that have been consistently considered in determining the best interest of the child were set out in the Texas Supreme Court's opinion, *Holley v. Adams*,

544 S.W.2d 367, 371-72 (Tex. 1976). These factors are: (1) the child's wishes; (2) the child's emotional or physical needs now and in the future; (3) the emotional or physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) programs available to help those parties; (6) plans for the child by the parties seeking custody; (7) the stability of the proposed placement; (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper; and (9) any excuses for the acts or omissions of the parent. *See Id.* The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App.—Waco 2013, no pet.). There is no requirement that every factor must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

When a child is too young to express his desires, the factfinder may consider that the child has bonded with the caregiver, is well-cared for by them, and has spent minimal time with a parent. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App. – Houston [14th Dist.] 2014, no pet.). C.J.B. was nine days old at the time he was removed and approximately eleven months old at the time of trial. According to the testimony, C.J.B.'s foster home was the only home he had ever known and he was "very attached" to the foster family.

Meanwhile, we find no evidence in the record that Father exercised visitation or had contact with C.J.B. during the pendency of this case.

Further, permanence is of paramount importance in considering a child's present and future needs, and prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. *See In re M.C.T.*, 250 S.W.3d 161, 170 (Tex. App.—Fort Worth 2008, no pet.); *See In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Father agrees that C.J.B.'s foster family provided a loving, safe, and stable home. In contrast, Father was incarcerated at the time of the final hearing and was facing up to ten years in prison. Even before he was incarcerated, Father's living situation was unstable. He lived in a room at his brother's business and on an unnamed person's couch. His post-incarceration living plans were not specifically discussed. Though Father hoped that his brother would temporarily take care of C.J.B. until he was released from custody, there was no evidence that his brother was willing or able to provide a safe and stable home for C.J.B.

Finally, a parent's decision to use illegal drugs while the termination suit is pending is relevant in determining whether a parent poses a present or future risk of physical or emotional danger to the child. *See In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.). Father used methamphetamine prior to C.J.B.'s birth, and C.J.B. was removed shortly after he was born because his meconium tested positive for methamphetamine. Father then relapsed on methamphetamine multiple times

throughout this case, knowing his parental rights to C.J.B. were at stake. He indicated to the Department that he used drugs as a coping mechanism, and there was no evidence that Father acquired any healthy coping skills that might alleviate the concern for future relapse. Father attributed his recent sobriety to his incarceration, but he discussed no plans for maintaining his sobriety once released.

We find the evidence is legally and factually sufficient to support the trial court's finding that termination of Father's parental rights was in C.J.B.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We overrule Father's fifth issue.

## Denial of Motion to Extend Dismissal Deadline

In his sixth issue, Father complains that the trial court erred by denying his motion to extend the statutory dismissal deadline. *See Id.* at § 263.401(b). In a termination suit brought by the Department, a trial court may extend the statutory dismissal deadline for up to 180 days if the movant shows that (1) extraordinary circumstances necessitate the child remaining in the Department's temporary managing conservatorship, and (2) continuing the appointment of the Department as temporary managing conservator is in the best interest of the child. *Id.* We review a trial court's decision to deny an extension of the dismissal date under an abuse of discretion standard. *In re D.M.*, 244 S.W.3d 397, 416 (Tex. App.—Waco 2007, no pet.) (op. on reh'g).

The final hearing in this case was set on December 11, 2023. Father filed his motion for extension on the day of the final hearing, seeking additional time to complete his

services. At the hearing on the motion, Father agreed that he received his service plan in February of 2023 and was not incarcerated at that time. He was arrested in October of 2023 and had not yet completed his services. Father testified that he intended to accept a plea deal at his next court setting on his possession of a controlled substance charge. He believed the plea deal would require him to serve three additional months in jail, leaving him three months out of custody to complete his services before the extended deadline, if granted, would expire. The trial court found there were not extraordinary circumstances warranting extension, and that extension would be contrary to C.J.B.'s best interest.

Actions that are considered to be the parent's fault – including but not limited to incarceration – will generally not constitute extraordinary circumstances. *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied). When a parent, through his or her own choices, fails to comply with a service plan and then requests an extension of the statutory dismissal deadline at the time of trial in order to complete the plan, the trial court does not abuse its discretion by denying the extension. *See In re K.P.*, No. 02-09-00028-CV, 2009 Tex, App, LEXIS 6301, 2009 WL 2462564, at *11-12 (Tex. App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.). In this case, Father had approximately eight months to make progress on his service plan before he was taken into custody. He explained that he had not completed his services prior to his arrest because he was "just trying to keep [his] family together." Specific to the drug treatment program, prior to

incarceration, Father discussed how his noncompletion was due to his feeling uncomfortable talking about his issues with his sponsor, lack of privacy while participating in the program due to his living situation, and not feeling like he was "getting anything" out of the program. He was unsuccessfully discharged from his parenting class twice due to his lack of attendance. The evidence establishes that it was Father's choices during the proceedings that kept him from timely completing his services and demonstrating adequate compliance with his service plan. Further, Father did not present any evidence at the hearing as to how the proposed extension might be in the best interest of C.J.B. The trial court did not abuse its discretion in denying Father's motion to extend the dismissal deadline. We overrule Father's sixth issue.

## Conclusion

Having overruled all of Father's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed May 16, 2024
[CV06]

